**WISCONSIN BARGE LINE, INC. (formerly Bernhardt Bros. Tugboat Service, Inc.)**

v.

**COASTAL MARINE TRANSPORT COMPANY, Inc., et al.**

**Civ. A. No. 66-12.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.
May 21, 1968.

Charles E. Lugenbuhl, Lemle & Kelleher, New Orleans, La., for plaintiff.

Peter J. Butler, Sehrt, Boyle & Wheeler, New Orleans, La., for intervenor, Fidelity Nat. Bank of Baton Rouge.

Roland C. Kizer, Jr., Kizer, Heaton, Craig & Cangelosi, Baton Rouge, La., for defendant, Coastal Marine Transport, Inc.

William A. Porteous, III, Porteous & Johnson, New Orleans, La., for defendant, Greenwood Ins. Agency, Allen Greenwood, and Mrs. Pat Greenwood.

Maurice J. Wilson, Breazeale, Sachse & Wilson, Baton Rouge, La., for defendant, Wright Ins. Agency, Inc.

Edwin K. Legnon, John W. Sims, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for defendants, Harold B. Hill, British Insurance Companies, and Underwriters at Lloyd's.

WEST, Chief Judge:

Plaintiff, Wisconsin Barge Line, Inc. (formerly Bernhardt Bros. Tugboat Service, Inc.) brings this suit under a marine hull policy to recover for the loss of its vessel, the M/V BADGER BOY, which was destroyed by Hurricane Betsy on or about September 10, 1965. Plaintiff filed suit first against the defendants, Coastal Marine Transport Company, Inc., Underwriters at Lloyd's, and numerous British insurance companies. When Underwriters at Lloyd's and The British Companies answered claiming a prior cancellation of the insurance policy involved, hereinafter referred to as the Lloyd's policy, plaintiff, by amended complaint, sought recovery from the defendants, Wright Insurance Agency, Inc. and Mrs. Pat Greenwood, d/b/a Greenwood Insurance Agency, on the ground of breach of contract for negligently failing to notify the plaintiff of the cancellation. Lloyd's and the British Companies filed a crossclaim against Mrs. Greenwood and her husband, Allen Greenwood, d/b/a Greenwood Insurance Agency, hereinafter collectively referred to as Greenwood, asserting that if the cancellation was defective, said defect was the result of Greenwood's fault and neglect. Greenwood filed a crossclaim against Coastal Marine and the Wright Agency seeking indemnity or contribution in the event it, Greenwood, was held liable to the plaintiff. Plaintiff's claim against Coastal Marine Transport Company, Inc., the bareboat charterer of the BADGER BOY at the time of the loss, was for the value of the vessel lost and for unpaid charter hire totaling $5,635. Fidelity National Bank of Baton Rouge intervened claiming the proceeds of the policy pursuant to an alleged assignment made in its favor by Coastal Marine. After hearing the evidence, it is the opinion of this Court that, among other things, (1) the policy of insurance in question had not been properly cancelled in accordance with law at the time of the loss as no notice of cancellation was ever sent by anyone to the plaintiff, who was a named insured under the policy; and (2) the policy, still being in effect at the time of the loss, the various British insurers and Underwriters at Lloyd's, made defendants herein, are indebted to the plaintiff for the loss of the M/V BADGER BOY up to the limit of their policy, i. e., in the sum of $40,000. The Court also concludes that the British companies and Lloyd's have a right to recover over against their agent, Pat Greenwood and Allen Greenwood, d/b/a Greenwood Insurance Agency, for the total amount of the loss sustained by them as a result of the failure of Greenwood to send notice of cancellation to the plaintiff, and the plaintiff, Wisconsin, also has a right to judgment against Coastal Marine Transport Company, Inc. for the amount of its loss occasioned by the sinking of the BADGER BOY, together with the sum of $5,635, representing unpaid charter hire as provided for in the charter agreement. And the Court further concludes that the Fidelity National Bank of Baton Rouge is not entitled to recover any part of the proceeds of the policy in question.

The facts leading up to this suit are quite clear. In April of 1964, plaintiff, Wisconsin Barge Lines, Inc., entered into a charter agreement whereby it chartered its vessel, the M/V BADGER BOY to the defendant, Coastal Marine Transport, Inc. One of the provisions of this charter agreement read as follows:

"The Charterer shall carry Hull and P & I insurance in the amount of $275,000.00. Charterer shall furnish Owner with copies of the insurance required hereunder or other evidence of

such insurance satisfactory to Owner. Owner and Badger State Bank shall be named as coinsureds on policy as their interest may appear."

The Wright Insurance Agency, Inc., one of the defendants herein, had handled the insurance needs of Coastal Marine for several years, and was an agent for, among other companies, the Home Insurance Company. At the request of Coastal Marine, the Wright Agency, on June 1, 1964, covered the M/V BADGER BOY with a policy of hull insurance which it, as agent, issued on behalf of Home Insurance Company. In this policy, by endorsement, the plaintiff, now known as Wisconsin Barge Line, Inc., but then known as Bernhardt Bros. Tugboat Service, Inc. was named, along with coastal Marine Transport, Inc., as a named insured. The Badger Bank of Cassville, Wisconsin, was named as a loss payee. On January 1, 1965, due to an unfavorable loss record and due to delinquency by Coastal Marine in its payment of premiums on this policy, Wright was instructed by the Home Insurance Company to cancel this coverage. Wright, after cancelling the Home policy, then attempted to replace Coastal's marine coverage in the American insurance market, but without success. Wright was then contacted by Mr. Allen Greenwood of the Greenwood Insurance Agency, who had learned of Coastal's insurance needs, concerning possible coverage, and as a result of this contact, the coverage was ultimately placed on the BADGER BOY, along with coverage on other vessels, by the Greenwood Insurance Agency through the brokerage firm of Grieve and Irwin, of London, England, with various Underwriters at Lloyd's and British companies, all of whom are now made defendants in this suit. After receiving approval of this insurance, Greenwood prepared its own cover notes (C 3381 and L 3381) as evidence of the existence of the Institute of London Underwriters Companies Combined and Lloyd's London Policies Nos. 031/25578, hereinafter referred to as the Lloyd's policy. After the cover notes were issued by Greenwood, Greenwood sent sufficient copies of the cover notes to Wright who in turn mailed them to the named assured and the various loss payees, including the plaintiff. Under the cover notes issued, the M/V BADGER BOY was afforded hull coverage in the amount of $40,000. These cover notes originally showed the assured to be "Coastal Marine Transport Company and/or Associates and/or Other Assureds as Their Respective Rights and Interests May Appear." Upon receipt of these cover notes, plaintiff immediately advised Wright that pursuant to the charter agreement between plaintiff and Coastal, plaintiff was to be named as an assured along with Coastal in any policy issued covering the BADGER BOY. Pursuant to this notification, Wright in turn requested Greenwood to issue the necessary endorsement to effect this change, and Endorsement No. 3 was issued and attached to the cover notes, which provided:

"It is understood and agreed that with respect to the vessel 'BADGER BOY' the named insured is amended to read as follows:

"COASTAL MARINE TRANSPORT, INC. and BERNHARDT BROS. TUGBOAT SERVICE, INC."

Endorsement No. 1, attached to the policy, provided:

"With respect to the vessel 'BADGER BOY', it is understood and agreed that Loss, if any, is payable to the insured and The Badger Bank, Cassville, Wisc."

This Lloyd's policy issued for the period January 1, 1965 through January 1, 1966.

As Coastal Marine was unable to pay the entire premium at the time the policy was issued, which was required by Underwriters at Lloyd's and by the other British Companies, Greenwood Insurance Agency arranged for premium financing through the Union National Bank of Little Rock, Arkansas. When the financing contract was approved and executed by Coastal Marine, Union National Bank forwarded the full premium to the Greenwood Agency which, after deducting its

brokerage commission, remitted the net premium to the Underwriters through Grieve and Irwin. From the very inception of the policy, Coastal Marine was apparently in financial difficulties and was unable to pay the premiums as the payments matured. Coastal Marine was apparently cautioned on several occasions by both Greenwood and Wright that it was in danger of losing its coverage if the premiums were not paid, and on May 10, 1965, Grieve and Irwin, in London, learned that Coastal Marine was attempting to procure coverage in the London market through other brokers. When contacted about this by Wright, Coastal Marine advised Wright that they thought they could get their insurance cheaper elsewhere and instructed Wright to have Greenwood cancel their coverage. This message was conveyed by Wright to Greenwood, and on May 12, 1965, Wright wrote to Greenwood confirming their telephone conversation and stating that Coastal Marine had instructed Wright to have the coverage cancelled because Coastal could not pay the premium note and thought it could obtain the coverage cheaper elsewhere. But on that same day, Greenwood Insurance Agency, who had been advised by Grieve and Irwin that Coastal was seeking insurance elsewhere because of poor handling of claims, prepared and mailed out a notice of cancellation and gave as a reason therefor the failure of Coastal Marine to pay its premiums. Greenwood Insurance Agency sent a notice of this cancellation directly to Coastal Marine Transport, Inc., and also sent a copy to Wright Insurance Agency, Inc. It is undisputed that no notice of the cancellation was ever sent to the plaintiff, Wisconsin Barge Line, Inc., either under that name, or under the name of Bernhardt Bros. Tugboat Service, Inc. Greenwood did, however, send two extra copies of the notice of cancellation to the Wright Agency with the request that Wright forward those copies to Neshoba Transportation Company and the Alton Transportation Company who, according to Greenwood's information,

were parties at interest. These copies were, in fact, forwarded to those companies by the Wright Agency. Wright was not instructed or requested by Greenwood to send copies of the notice of cancellation to plaintiff, who was a named assured, or to any other parties at interest other than the two mentioned, and indeed, no copies were enclosed with Wright's notice for forwarding to any parties other than the two mentioned. There was a P. S. on the bottom of the cancellation notice sent to the Wright Agency which stated: "Please send copies of canc. endorsement certif mail to the Alton Trans. Corp. & The Badger Bank & ~~Neshoba Corp.~~ [sic] as we do not have correct addresses." There is no question but what Wright did forward copies to both Alton and Neshoba, but there is some question as to whether or not it did, in fact, send a notice to The Badger Bank. Whether they did or not, is, however, immaterial to a decision in this case. The fact of the matter is that the Greenwood Agency did not send a notice to one of the named assureds, namely, the plaintiff herein, Wisconsin Barge Line, Inc., nor did they send a notice to that company under its former name of Bernhardt Bros. Tugboat Service, Inc. Neither did Greenwood request the Wright Agency to do this. The fact that Wright was requested by Greenwood to send notices to Alton, Neshoba, and The Badger Bank only would certainly indicate that Greenwood had itself sent notices to all other parties at interest. There is no question but that Greenwood knew that the plaintiff was a named assured on this policy because it was Greenwood who issued the cover notes and it was Greenwood who issued the endorsement making the plaintiff an additional assured rather than just a loss payee.

■ Greenwood now takes the position that notice to Wright was, in fact, notice to the plaintiff, contending that Wright was the agent for Wisconsin Barge Lines, Inc. This is simply not so. To begin with, the Wright Agency in this case acted only as a broker, and not

as an insurance agent. Under the law of Louisiana a broker is defined as follows:

"An insurance broker is hereby defined to be an individual, partnership or corporation who or which shall, for a commission or brokerage consideration, act for or aid in any manner in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as agent for an insured or prospective insured other than himself or itself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent." LSA–R.S. 22:1162.

Since it is an established fact in this case that Wright Agency did not have the authority to issue a policy of insurance binding Lloyd's or The British Companies, it not being an agent therefor, it follows that at most Wright Agency could be considered only a broker who acted for or aided in negotiating a contract of insurance as agent for some insured or prospective insured. Wright's position was different at the time of the issuance of the Lloyd's policy from what it was when the Home Insurance Company policy was issued. When the Home policy was issued, Wright was, in fact, agent for Home Insurance Company, and it was its obligation to send notices of cancellation of that policy to all persons involved, which it did. But when the Lloyd's policy was issued, Wright acted only as a broker, at the request, not of the plaintiff, but at the request of its customer, Coastal Marine. Thus, as a broker, Wright was acting as agent for Coastal, and not for plaintiff. When the policy was issued by Greenwood, copies of the cover notes were sent to Wright who, in turn, and at Greenwood's request, transmitted them to both Coastal Marine and plaintiff. Actually, Wright was under no obligation to send copies of these cover notes to the plaintiff, Wisconsin Barge Line, Inc. That obligation rested solely and entirely with Greenwood. It was not the plaintiff who had designated Wright Agency to secure this coverage, but rather it was Coastal Marine for whom Wright was acting as broker. No duty was ever owed by Wright to the plaintiff. Mrs. Greenwood insisted throughout her testimony that she felt obligated to notify Coastal Marine directly. Consequently she sent notice, not through the Wright Agency, but directly to Coastal Marine. As is evident from all of the testimony, she had much greater reason to conclude that Wright was an agent of Coastal than she did to conclude that Wright was an agent of Wisconsin Barge Line, Inc., or Bernhardt Bros. Tugboat Service, Inc. I think the evidence clearly shows that the failure to notify plaintiff of the cancellation did not in any way result from a belief that Wright was an agent for the plaintiff. It was an unfortunate oversight, pure and simple, as was so directly testified to by Mrs. Greenwood herself in the following testimony:

"Q. As I say actually it was not that you didn't think that they should not have notice—

"A. No.

"Q. —It was oversight that they were not notified.

"A. Right. * * *"

■■ There is no credible evidence whatsoever to show that Mrs. Greenwood ever really considered the Wright Agency to be an agent of the plaintiff, either when they were known as Bernhardt Bros. Tugboat Service, Inc. or when, after January 22, 1965, their name was changed to Wisconsin Barge Line, Inc. The fact is that if Mrs. Greenwood actually considered anyone to be an agent for anyone else, she considered Wright Agency to be the agent of Coastal Marine, and possibly, after the question of the validity of the cancellation became an issue, she may have considered Mr. Jackson, of Coastal Marine, an agent for the plaintiff. This is clearly indicated by her following testimony:

"Q. One other thing and that is: I think that you have stated many times that you considered Mr. Wright to be the agent for Bernhardt and, there-

fore, notification to Mr. Wright was tantamount, under your policy, to notification to Bernhardt.

"A. I would like to correct one thing, Your Honor. I considered Mr. Jackson as the man in charge of the subject of insurance for Bernhardt Brothers or Wisconsin, or whoever—but I considered Mr. Wright as agent in charge of insurance for Mr. Jackson."

Whether or not Wright was, in fact, an agent of Coastal Marine is immaterial in view of the fact that the cancellation notice was not sent to Coastal Marine through Wright, as agent, but was sent directly to Coastal Marine. Thus Coastal Marine, a named insured, received proper notice of cancellation direct from Mrs. Greenwood, who was obviously an agent of the insurer. Mrs. Greenwood had absolutely no reason to conclude that Wright was an agent of the plaintiff, and indeed she testified over and over again that she considered Mr. Jackson as the plaintiff's agent. Thus it is obvious that the notice sent to Wright was not sent to him as an agent for anyone. It was sent for two reasons: (1) for informational purposes, and (2) for the purpose of requesting Wright, as a favor, to send the two enclosed copies of the cancellation notice to two persons listed in the policy as loss-payees, whose addresses Greenwood did not have. In view of the notice sent directly to Coastal Marine, the notice sent to Wright could serve no other purpose. Wright was simply not an agent of the plaintiff, and Greenwood knew it. The plaintiff knew it too, as is evidenced by the testimony of Mr. Eckstein, an officer of Wisconsin Barge Line, Inc., when he said, when questioned about some prior insurance: "The broker was Charles Sexton and Company in Minneapolis. They handled all of our maritime insurance." There was certainly no mention in his testimony that Wright had ever been designated as their agent to handle their insurance, much less to accept any notices of cancellation. But even if we concluded that Wright was acting in the capacity of broker for the plaintiff, Wisconsin, absent a showing that Wright was in *general charge* of Wisconsin's insurance, notice of cancellation to it, Wright, would not be notice to its principal. This case is easily distinguishable from the holding in Schwabach & Company v. Gulf Shipside Storage Corp., 173 F.Supp. 105 (DC E.D.La.–1959), reversed on other grounds, Ex parte Underwriters at Lloyd's London, 276 F.2d 209 (CA 5–1960), cert. den. Gulf Shipside Storage Corp. v. Underwriters at Lloyd's London, 364 U.S. 830, 81 S.Ct. 69, 5 L.Ed.2d 57, wherein the Court found that notice of cancellation to the broker did constitute notice to the assured. In that case it was specifically found that the broker, Bodet, "was Gulf's agent in general charge of its insurance problems" and that Bodet had actually accepted the "no coverage" notice and that Gulf, Bodet's principal, had authorized him to do so. Thus, in light of these facts, the Court concluded that "where the principal has clothed the broker with full authority to act for it on the subject of insurance, notice to him of cancellation is, in law, notice to his principal." In the present case we have an entirely different situation. There is no evidence whatsoever in this case to indicate that Wright Agency had ever been clothed with "full authority to act for" Wisconsin Barge Line, Inc. on the subject of insurance. On the contrary, no authorization of any kind was given either expressly or impliedly by Wisconsin to Wright Agency allowing the latter to act as its agent in general charge of the subject of insurance. Mr. Eckstein's testimony previously referred to herein is quite to the contrary. The insurance involved here was procured by Wright through the Greenwood Agency at the request of Coastal Marine, and not at the request of or even to the knowledge of the plaintiff. It was only after receipt of the cover notes by Wisconsin that it discovered that it was named as a loss-payee rather than as an additional assured. Since the cover note had been sent to it by Wright Agency, it was only logical that Wisconsin should

suggest to Wright that the named assureds in the policy be changed to reflect that Wisconsin was also a named assured along with Coastal Marine. This certainly in no way clothed Wright, who was simply acting as a broker for Coastal Marine, with "full authority to act for it (Wisconsin) on the subject of insurance." Indeed, Mr. Ray A. Eckstein, an officer of Wisconsin Barge Line, Inc., testified very frankly that Wisconsin Barge Line relied entirely on Coastal Marine to select the agent and the insurer insofar as the insurance on the BADGER BOY was concerned, and that it relied entirely upon Coastal Marine to pay the premiums and to do all other things necessary to keep the vessel insured. It is obvious that Wisconsin never considered the Wright Agency as its agent clothed with authority to either place insurance or to accept notice of cancellation. It merely advised the Wright Agency of an error in the policy when it received its copy showing Wisconsin to be a loss-payee rather than a named assured. This contact between Wisconsin and Wright certainly could not be construed as clothing Wright "with full authority to act for it (Wisconsin) on the subject of insurance," nor could it in any way be considered as appointing Wright as Wisconsin's "agent in general charge of its insurance problems." It is thus amply clear that notice of cancellation served on the Wright Agency could in no way be considered to be service of notice on the assured, Wisconsin Barge Line, Inc. as was stated in the case of Jordan v. Commercial Union Fire Insurance Co. of New York, 167 So. 227 (La.App.1936):

> "The rule then very plainly is that the authority to procure insurance or 'to keep up' insurance does not, without special authority as to cancellation, authorize the acceptance of notice of cancellation."

While Wisconsin did acquiesce in the placement of the coverage by the Greenwood Agency through Underwriters at Lloyd's and the other British companies, and while the plaintiff did correspond with Wright in connection with an error in the policy, the plaintiff certainly did not, in any way, confer special authority on the Wright Agency to accept a notice of cancellation on its behalf.

Thus, the question remains as to whether or not, absent notice of cancellation to the plaintiff, the policy was cancelled in accordance with the provisions of Louisiana law. Louisiana Revised Statutes, Title 22, Section 636, provides:

> "A. Cancellation by the insurer of any policy which by its terms is cancellable at the option of the insurer, or of any binder based on such policy, may be effected as to any interest only upon compliance with either or both of the following:

> "(1) Written notice of such cancellation must be actually delivered or mailed to the insured or to his representative in charge of the subject of the insurance not less than five days prior to the effective date of the cancellation.

> "(2) Like notice must also be so delivered or mailed to each mortgagee, pledgee, or other known person shown by the policy to have an interest in any loss which may occur thereunder."

■ There is no dispute in this case about the fact that no notice of cancellation was ever sent by anyone to the plaintiff, Wisconsin Barge Line, Inc. That fact is admitted by all parties to this suit. Having decided that the Wright Agency was not the agent or representative of the plaintiff, Wisconsin Barge Line, Inc., and that notice upon Wright could not be considered as notice upon Wisconsin, the only other possibility to be considered is whether or not notice of cancellation mailed to Coastal Marine Transport Company, Inc., the charterer of the M/V BADGER BOY, constituted notice to the plaintiff. We could only come to this conclusion if we were to say that Coastal Marine was plaintiff's "representative in charge

of the subject of the insurance." But I believe, as argued by the plaintiff, to so argue is specious. To say that Coastal Marine, a named insured, was the agent of the plaintiff, the other named insured, and that notice to one constituted notice to the other, is blinking at reality. It was important to the plaintiff that it be named as an insured in the policy and Greenwood knew it. When the policy was first issued the plaintiff was listed only as a loss-payee. When this came to plaintiff's attention, it made an issue of it and demanded that the policy be changed to show them as a named insured. This was done by endorsement issued by Greenwood. Thus it was vividly called to the attention of Greenwood that the plaintiff, who was then known as Bernhardt Bros. Tugboat Service, Inc., and Coastal Marine had interests possibly adverse to each other and that they wanted to be protected by being each named as an insured in the policy. Just how adverse their interests really were is vividly evidenced by the fact that Coastal Marine apparently attempted to assign all of the proceeds of this policy of insurance to the Fidelity National Bank of Baton Rouge as collateral for debts owed not by plaintiff but by Coastal Marine. There is no indication that plaintiff ever designated Coastal Marine as its agent to receive notice of cancellation or for any other purpose. The only connection between the plaintiff and Coastal Marine was that of owner and charterer respectively of the M/V BADGER BOY. Coastal was not operating the vessel as an agent of or for the account of the plaintiff. There was simply no agency relationship between them whatsoever and consequently Coastal Marine could not be considered as plaintiff's "representative in charge of the subject of the insurance" as contemplated by LSA–R.S. 22:636. Plaintiff was the owner of the vessel and a named insured in the policy. Coastal Marine was an independent charterer of the vessel, operating it for its own account, and also a named in-

sured in the policy. Neither was agent for the other, and both were entitled to the independent notification of cancellation of the policy as required by LSA–R.S. 22:636. To argue that notice to one insured automatically constitutes notice to the other would do violence to the clear intent of that statute. Plaintiff was not given this notice, and hence the policy was not cancelled in accordance with law as of the time of the loss on September 10, 1965. Certainly when paying a loss under the policy, the defendant insurers would not contend that they could pay the entire loss to the assured who happened to be in possession of the vessel, and disregard entirely the other named insured, and thus completely discharge its obligation under the policy. The purpose of the plaintiff being included as a named insured was to give it all of the protection and benefits of a named insured, including the right to participate in the proceeds of the loss, together with the right, under the above quoted statute, to be given notice of cancellation, or any other notice that might affect its interests. To hold otherwise would do violence to common sense.

It was the testimony of Mrs. Pat Greenwood that she did not consider it necessary to send any notice to the plaintiff, who was listed on the policy by the name of Bernhardt Bros. Tugboat Service, Inc. as an assured because she considered notice to Coastal Marine alone sufficient. While she stated on several occasions that she considered the Wright Agency to be the agent for Wisconsin, her other testimony seems to clearly indicate that her real reason for not sending a notice to the plaintiff was that she considered not the Wright Agency, but Coastal Marine, to be the agent or representative of the plaintiff. For example, the following testimony was given by her in answer to questions by the Court:

"Q. Mrs. Greenwood, may I ask you isn't it customary when a policy is

cancelled to send notification to all insureds under the policy?

"A. Ordinarily—

"Q. As distinguished from loss-payee?

"A. Ordinarily, yes, Your Honor, it is. However, in all instances here, 1 think it has been shown to the Court that we considered Mr. Wright as agent for the insureds and in turn, by sending to Mr. Jackson [President of Coastal Marine] and having his signature applied and having received our cancellation, we considered him as the agent.

"Q. If you considered him the agent, why didn't you send notice—

"A. —and our cover note specifically states 'or agent.'

"Q. Then why did you send notice to these other people? Why didn't you just send it to Mr. Wright?

"A. That was a little bit of lagniappe.

"Q. It would have been a little more lagniappe if the co-insureds received notice?

"A. Well, of course, at that time we knew nothing about Wisconsin Barge Line.

"Q. But you knew about Bernhardt?

"A. Bernhardt, but we considered Bernhardt, if you look at our cover note, and our endorsement, you will see that Coastal Marine and Bernhardt Brothers are on the same line. I don't know, but at that time we definitely considered that if Mr. Jackson, Coastal Marine, received our cancellation, that we were perfectly in order.

"Q. And then if there was another co-insured, they were not entitled to notice of the cancellation? Supposing you had sent it just to Bernhardt, and not to Coastal, then you would have assumed that Coastal didn't require notice?

"A. We never would have done that. After all, Coastal was paying the bill, he was the man that we considered agent for all of the loss-payees and all of the additional assureds."

And, further, during the course of her testimony, Mrs. Greenwood stated:

"Q. Isn't it true though, Mrs. Greenwood, that it was a mere oversight that the co-insureds were not notified?

"A. Yes. We would have. In this instance I feel very sure, Your Honor, that we would have included Bernhardt Brothers cancellation letter in the two that we sent to Mr. Wright because we had no address for the other two.

"Q. As I say actually it was not that you didn't think they should not have notice—

"A. No.

"Q. —It was oversight that they were not notified.

"A. Right. * * *"

And from other testimony of Mrs. Greenwood, it is obvious that she did not consider the Wright Agency agent for the plaintiff. For example, she testified as follows:

"Q. One other thing and that is: I think that you have stated many times that you considered Mr. Wright to be the agent for Bernhardt and, therefore, notification to Mr. Wright was tantamount, under your policy, to notification to Bernhardt.

"A. I would like to correct one thing, Your Honor. I considered Mr. Jackson as the man in charge of the subject of insurance for Bernhardt Brothers or Wisconsin, or whoever— but I considered Mr. Wright as agent in charge of insurance for Mr. Jackson.

"Q. Well, then, if you did, why—

"A. And I notified both of these gentlemen.

"Q. If you did, why did you consider it necessary to send notice to

Mr. Jackson? Would not your notice to Mr. Wright have been sufficient?

"A. I just felt that Coastal Marine should have it because he was acting as agent for everyone concerned.

"Q. Well, even though Bernhardt was named as an insured, you figured that Mr. Wright—notification to Mr. Wright was sufficient notification to Bernhardt Brothers, but notification to Mr. Wright would not have been sufficient notification for Coastal?

"A. No. I wanted Mr. Jackson himself to have this cancellation notice. He was acting in my eyes as agent for all loss-payees and additional insureds.

"Q. If that is the case, why did you state—why did you state back here, I think you said you didn't have the slightest idea, when you were asked why did you not notify Wisconsin or Bernhardt Brothers, why did you state you hadn't—

"A. Well, Wisconsin, we had not heard about at all until after.

"Q. But Bernhardt Brothers?

"A. Yes, Bernhardt Brothers—

"Q. You haven't the slightest idea why?

"A. I don't know why they were left out.

"Q. So they weren't left out because you considered somebody their agent and thus properly notified?

"A. No. Oh, yes, I want to say emphatically that I feel that we needn't have notified anyone except Mr. Jackson and Mr. Wright as stipulated in our cover notes. Mr. Jackson was the agent in charge of insurance for the loss-payees and additional assureds.

"Q. So you didn't have to send out all of those notices?

"A. No, certainly I didn't feel that we had to at all, in view of this, but we did and, unfortunately we left off Bernhardt Brothers.

"Q. Very unfortunately.

"A. Yes."

■ It is quite clear from this testimony that the Greenwood Agency simply made a mistake and failed to send a notice of cancellation to one of the named assureds as is required by law. This failure was fatal to the attempted cancellation of the policy. Under LSA–R.S. 22:636, notice must be sent to all parties at interest to effect cancellation of the policy. Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959). In the absence of such notification, the policy was not effectively cancelled and thus must be considered to have been in full force and effect at the time of the loss on September 10, 1965, which was within the coverage period of the policy.

■ In addition to claiming the proceeds of the policy for the loss of the vessel, plaintiff also seeks to recover statutory penalty and attorney fees contending that the defendants acted arbitrarily and capriciously in refusing to pay the proceeds under the policy. Plaintiff cannot prevail in this respect. It was not arbitrary and capricious for the defendant insurers to refuse to pay under a policy which they thought had been properly cancelled. The insurers, Underwriters at Lloyd's and the various British companies, had been notified by their agent, Greenwood Insurance Agency, that the policy had been properly cancelled and that all parties had been duly notified of the cancellation. In view of this fact, it was not arbitrary and capricious for them to refuse to pay under the policy. Skipper v. Federal Insurance Company, supra.

■■ It remains only to dispose of the various cross-claims filed by the defendants against each other, and the intervention filed by Fidelity National Bank of Baton Rouge. From the foregoing it follows that the plaintiff is entitled to judgment against Underwriters at Lloyd's and the various British companies for the full amount of the policy involved, it having been conceded by all parties that the value of the vessel ex-

ceeded the $40,000 face value of the policy. As previously stated, plaintiff is not entitled to penalty and attorney fees as it is concluded that the insurers' failure to pay under the policy was not arbitrary or capricious. It is also evident that the plaintiff is entitled to judgment against Coastal Marine for the loss suffered by plaintiff as a result of the sinking of the vessel, together with the uncontested amount of $5,635 in unpaid charter payments. These awards against Underwriters at Lloyd's, the various British companies, and Coastal Marine will bear legal interest from date of judgment until paid. Since the failure to effect legal cancellation of the policy in question was due entirely to the failure of Greenwood to give proper notice thereof to the plaintiff, and since, as issuing agent of the insuring companies, and the one at whose instance the cancellation was attempted, the defendants, Underwriters at Lloyd's and the various British companies, are entitled to judgment over against Mrs. Pat Greenwood and Mr. Allen Greenwood, d/b/a Greenwood Insurance Agency, for the total amount of the judgment rendered herein against said defendants. Since the Court has concluded that the failure to effect a legal cancellation of the Lloyd's policy was occasioned by no fault or neglect on the part of the Wright Agency, the cross-claim of Greenwood against Wright must be dismissed. And lastly, the Court having concluded that the assignment by Coastal Marine to Fidelity National Bank of Baton Rouge of its accounts receivable did not and could not have included an assignment of the proceeds of the hull policy involved in this suit, it follows that the intervention filed by Fidelity National Bank of Baton Rouge must also be dismissed.

Counsel for plaintiff is instructed to furnish the Court with a proposed form of judgment to be entered herein, which, after being approved by the Court, will be entered accordingly.