## Samuel J. Goucher, Appellant, v. Providence Washington Insurance Company.

*Marine insurance—Measure of damages—Running down clause—Liability of underwriter thereunder.*

The perils insured against in a policy of marine insurance, as ordinarily executed, do not include damages to another vessel by collision between such vessel and the vessel injured. This risk, when assumed, will be found in the "Running Down Clause."

In determining the liability of the underwriter under such clause, the value placed upon the vessel insured in the body of the policy does not enter into the controversy excepting in so far as it is a factor in making the calculation. If by the words of the clause the undertaking of the underwriter is dependent upon the amount which the insured *became liable to pay and shall pay,* the sum paid will be the amount of damages which have been satisfied to the damaged party: Thomson v. Hopper, 7 E. & B. 172, followed.

Argued Dec. 17, 1896. Appeal, No. 171, Nov. T., 1896, by plaintiff, from order of C. P. No. 2, Phila. Co, June T., 1895, No. 1052, refusing judgment for whole amount claimed in statement of claim, for want of sufficient affidavit of defense. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

Assumpsit on policy of marine insurance.

The plaintiff by his statement claimed to recover $392.74. An affidavit of defense was filed admitting the sum of $199.22 to be due. Upon hearing of the rule for judgment for want of a sufficient affidavit of defense, the court entered judgment in favor of the plaintiff for the amount admitted to be due by defendant, with interest. An exception was thereupon granted to the refusal of the court to enter judgment for the full amount of the statement, with interest.

Other facts appear from the opinion of the Superior Court.

Judgment for plaintiff for $199.22. Plaintiff appealed.

*Error assigned,* was refusing to enter judgment for the full amount of claim, with interest.

*Horace L. Cheyney*, with him *John F. Lewis*, for appellant. —The words of the policy are those of the insurance company, and are to be construed most strongly against them: Ins. Co. v. Crooper, 32 Pa. 351; Ins. Co. v. Updegraft, 43 Pa. 359; Ins. Co. v. Brock, 57 Pa. 80; Grandin v. Ins. Co., 107 Pa. 26.

The word "pay" had been considered under a similar contract in the case of Tolman v. Ins. Co., 1 Cushing, 76; Beals v. Ins. Co., 36 N. Y. 522.

Where the property insured is valued in the policy, such valuation is, in the absence of fraud, conclusive and binding upon the parties and cannot be contradicted: Phillips on Insurance, sec. 11, p. 183; McArthur on Marine Insurance, p. 70; Tyser on Insurance Losses, p. 162; Barker v. Janson, L. R. 3 C. P., 303; Hodgson v. Ins. Co., 5 Cranch, 100.

*Theodore M. Etting*, for appellee.—Congress had the power to pass the act of 1851, and it is binding on all courts and jurisdictions throughout the United States: Providence & New York S. S. Co. v. Hill Mfg. Co., 109 U. S. 578.

As to the practice under the act. That no analogy exists between the transfer of the vessel to a trustee for the benefit of all who may have claims upon the fund and the transfer of the vessel to the libellant himself, would seem to be clear: The Scotland, 105 U. S. 24; Norwich v. Wright, 13 Wallace, 104; The Benefactor, 103 U. S. 239. The amount of the liability has been determined by the decree of the District Court and is binding in all courts and in all jurisdictions: The Providence and N. Y. S. S. Co. v. The Hill Mfg. Co., 109 U. S. 578.

OPINION BY WILLARD, J., January 18, 1896:

The appellant, as part owner of the schooner "R. and T. Hargraves" and having an insurable interest therein, on the 13th day of December, 1893, entered into a contract with the appellee known as a policy of marine insurance, by the terms of which the latter, in consideration of a premium in money paid by the appellant, undertook and agreed to indemnify him against loss by certain perils of the sea, in said policy named, for and during the term of one year from the date thereof.

Ordinarily under the terms of such contracts, damage done by the vessel insured to another vessel by collision was not

held to be one of the perils covered by the contract of indemnity, although there is a conflict of authority on this subject. · This led to the insertion of a clause in marine policies known as the "running down " clause.

In the contract between these parties the Hargraves was valued at the sum of thirty-eight thousand, four hundred dollars ($38,400), and in case of total wreck or loss this amount " in the absence of intentional fraudulent over valuation " was the sum fixed to be paid, and in case of partial loss or damage, under any of the terms of the policy, this sum was to be taken as the denominator of any fractional loss or damage.

The policy in question contained a clause which is here inserted as upon its construction this case hinges. It is as follows : " It is agreed that if the vessel hereby insured or her owners, shall, in consequence of collision with another vessel, become liable to pay, *and shall pay*, any sum or sums, for damages resulting therefrom, to said other vessel, her freight or her cargo, in such case this company will contribute towards the payment of three fourths of the total amount of said damages in the proportion that the sum insured under this policy bears to the total valuation of the vessel as stated therein, provided that this company shall not in any event be held liable under this agreement for a greater sum than three fourths parts of the amount insured under this policy."

On June 14, 1894, at Norfolk, Va., the Hargraves was in collision with, ran down and sunk the schooner " W. W. Ward." At the instance of the owners of the latter and other parties interested, a libel was filed in the district court of the United States for the Eastern District of Virginia against the Hargraves, which vessel was thereunder attached and by order of said court (under a stipulation hereafter referred to) sold by the marshal of the district, and at the sale was purchased on behalf of and for the owners of the schooner, Ward, and her cargo for the sum of seventeen thousand dollars ($17,000), which amount was paid into the registry of the court to await the determination of the cause.

Before the sale of the Hargraves by the marshal the following agreement was entered into and filed in the cause pending in the United States Court: " Memorandum of Agreement, made as a stipulation in the above entitled action, on this

seventh day of July, 1894, by and between the owners of the schooner ' W. Wallace Ward' of New Haven, Conn., the owners of the cargo of coal on board of the said schooner on June 14th, 1894, and the master and crew of the said schooner (by Sharp and Hughes, their attorneys and Proctors lawfully authorized), hereafter known as the parties of the First Part, and the owners of the schooner ' R. & T. Hargraves ' of Fall River, Mass., her master and crew (by Carver and Blodgett, their Attorneys and Proctors lawfully authorized), hereafter known as the parties of the Second Part.

" Witnesseth : First, that the parties of the first part for and in consideration of the Agreement hereinafter made in this stipulation, do hereby agree that the liability of the said parties of the second part shall be limited to the amount that said schooner, ' R. & T. Hargraves,' shall bring at a United States marshal's sale, properly advertised under the direction of the United States Marshal for the Eastern District of Virginia, as fully and effectually as though taken by the proper proceedings under the United States Statutes and the Supreme Court rules made in relation thereto as far as the said parties of the first part are concerned, or any party or parties claiming by, through or under them. The said owners of the schooner ' R. & T. Hargraves,' may be allowed to contest the amount of the liability to the Libellants in the above entitled action, but not to contest their liability in the first instance, but only the amount thereof, the said Honorable Court to issue a decree limiting the liability of the said parties of the second part to the proceeds of the sale of said schooner ' R. & T. Hargraves ' hereafter to be paid into the registry of the United States District Court of the Eastern District of Virginia.

" Second : That the said parties of the second part hereby agree that an interlocutory decree may be entered by the United States District Court for said District in favor of the Libellants finding the said schooner ' R. & T. Hargraves ' alone to blame for a certain collision with the said schooner ' W. Wallace Ward,' as claimed in a libel filed in this action, the amount of the liability thereof to remain open and to be assessed before a Commissioner and the Court if necessary.

" That a default in that particular may be entered and said schooner ' R. & T. Hargraves ' may be sold by a Marshal's sale

under order of the Court on the first day of August, A. D. 1894, said sale to be advertised and conducted in the usual way that Marshal's sales are conducted, and that the amount paid into the registry of the Court shall be considered the limitation of liability of the aforesaid parties of the Second Part as to the said parties of the First Part, and that upon the filing of this stipulation an order may issue from this Court limiting the liability of the said owners of the schooner 'R. & T. Hargraves' so that no further action shall be brought by the said parties of the First Part against the owner or master of said schooner 'R. &. T. Hargraves,' said order of the court to be issued under this agreement to be full and complete as if issued after a special hearing therein."

On the 9th of January, 1894, the above stipulation was filed and a decree entered for want of an answer, sale of the schooner ordered, and Allen R. Hanckel appointed a commissioner to assess damages.

On October 22, 1894, the following decree was entered in said district court: " This cause came on to be heard this day upon the papers formerly read and the report of Allen R. Hanckel, heretofore appointed as a commissioner to ascertain and report the damages by reason of a collision, in the libel mentioned. And it appearing to the court that no defense has been interposed and that the time for interposing the same has passed, it is adjudged, ordered and decreed that all persons claiming any right, title or interest in the said schooner 'R. & T. Hargraves' are in contumacy and default; and the court, proceeding to hear the cause upon the said libel and upon the said report of Commissioner Hanckel does adjudge, order and decree that the amount of loss suffered by the owners of the schooner 'W. Wallace Ward' by reason of said collision is thirty-thousand, five hundred and forty-four dollars and ninety-nine cents ($30,544.99), and that the amount of damage suffered by the owners of the cargo of said vessels is two thousand, nine hundred and fifty-eight dollars and seventy-two cents ($2,958.72).

"It further appearing to the court that the said schooner 'R. & T. Hargraves' has been sold and that the proceeds of sale are in the registry of this court, it is further adjudged, ordered and decreed that the said proceeds, after the payment of court costs

and expenses, shall be divided between the owners of the
'W. Wallace Ward,' to be paid to Henry Sutton, managing
owner, and the owner of the cargo in proportion to their respec-
tive losses.

"And it further appearing from the papers filed that the Prov-
idence Washington Insurance Company, owner of said cargo,
has authorized the said Henry Sutton to collect the amount
payable to it, it is further adjudged, ordered and decreed that
his receipt shall be a full discharge to the clerk for that propor-
tion.

"It is further adjudged, ordered and decreed that the amounts
hereinbefore decreed respectively to the owners of vessel and
cargo shall be payable to their proctors of record.

"And in accordance with an agreement duly filed in this case,
it is hereby ordered and decreed that the liability of the owners
of said schooner 'R.·& T. Hargraves' and of her master J. F.
Allen, for all damages caused to the owners of said schooner
'W. Wallace Ward,' or her captain and to the owners of the
cargo on board at the time by reason of the collision mentioned
in the libel herein, or to any parties claiming by, through or
under them or either of them, be and it is hereby limited to
the amount in the Registry of this Honorable Court received
from the sale of said schooner 'R. & T. Hargraves.' And it
is hereby further ordered, adjudged and decreed that the pay-
ment of said fund by the clerk in accordance with this decree
to the libellants or their proctors of record shall be a full and
final discharge of said owners of said schooner 'R. & T. Har-
graves' and said J. F. Allen, her master, from all claims against
them or either of them arising by reason of said collision."

In the court below the appellant filed his statement of claim,
basing it upon the amount of damages to the schooner Ward,
as found by the commissioner in the United States district
court, to wit, thirty-three thousand five hundred and three dol-
lars and seventy-one cents ($33,503.71), and claiming his pro-
portionate share thereof under the terms of his policy. To this
claim the appellee filed an affidavit of defense, averring that it
was only liable for the proportionate share of the amount real-
ized at the marshal's sale of the Hargraves, to wit: Seventeen
thousand dollars ($17,000) and admitted its liability for a pro-
portionate amount to be due, to wit: one hundred and ninety-

nine dollars and twenty-two cents ($199.22). Upon hearing of rule for judgment for want of a sufficient affidavit of defense the court below entered judgment in favor of plaintiff for the amount thus admitted to be due with interest. To this an exception was taken and granted. The error here assigned is to the refusal of the court to enter judgment against the defendant for three hundred and ninety-two dollars and seventy-four cents ($392.74) with interest, the amount claimed by the plaintiff in his statement.

Prior to March 3, 1851, where a vessel upon the navigable waters of the United States, through the carelessness or negligence of master or crew, collided with and damaged another vessel, the owner of the vessel causing the injury was held personally liable for the entire injury inflicted.

Since the passage of the Limited Liability Act by congress in that year, the rule is changed and the owner not being in fault himself, on the surrender of the offending vessel to a trustee, as provided in that act, and sale thereof by due process of law, may lose his vessel, but with the surrender of it and sale thereof under a decree in admiralty the owner is absolved from further personal liability.

The undertaking on the part of the appellee was that if the vessel hereby insured, or her owners, shall, in consequence of collision with another vessel, become liable to pay, *and shall pay*, any sum or sums for damage resulting therefrom to said other vessel, her freight or her cargo, in such case this company will contribute, etc.

By the United States statute above referred to, in case the owner is not in fault himself, the vessel alone is liable to pay the damage by a proper proceeding against said vessel in the proper court. The undertaking of the appellee is to pay a certain part of the amount that the Hargraves becomes liable to pay and does actually pay; while it is true the commissioner found the damage to the Ward and her cargo to be thirty-three thousand, five hundred and three dollars and seventy-one cents ($33,503.71), yet it is equally true when the Hargraves was sold by the marshal the sum realized at the sale was seventeen thousand dollars ($17,000), and this was the sum actually received by the owners of the Ward and cargo for the damage sustained as the result of the collision. If any other sum was paid,

who paid it; and from what source was it derived? It will not do to say that because the damage to the Ward and her cargo was appraised at thirty-three thousand, five hundred and three dollars and seventy-one cents ($33,503.71), therefore the appellee is liable to pay its proportionate share of that amount. The plain meaning and language of the contract is to pay a proportionate amount of the damage ascertained and paid, and the amount paid was seventeen thousand dollars ($17,000).

The value placed upon the Hargraves in the policy does not enter into this controversy, except in arriving at the true fraction of the liability. The Hargraves, so far as we know, was uninjured. Whatever her condition may have been is here immaterial. The risk under the "running down" clause must be confined to the damage done and paid to the owners of the Ward and cargo, for that was the risk assumed by the appellee, in the clause of the policy upon which this suit is founded. The appellant says the owner of the Ward took his vessel and he has lost it, therefore the appellee must pay on the basis of the appraisement, not the amount paid to and received by the owners of the Ward. The answer is, the appellee did not so agree and its liability under the clause cannot be so construed. The owners of the Ward did get the Hargraves, but how? As purchasers at marshal's sale, they being the highest and best bidders for the same.

The stipulation set forth in the affidavit of defense, entered into between the parties and filed in the United States Court in the libel proceeding, is not material. It in no way affected the rights of the parties, and its only object evidently was to expedite the proceedings. The result reached was the same. The Hargraves was sold by the marshal to pay the damages caused by running down the Ward.

Had the owners of the two vessels entered into a stipulation that the Hargraves should be turned over to the owners of the Ward and her cargo, without further proceedings, in satisfaction of the appraised damage, without collusion between them, then there might be some foundation for appellant's argument. But no such agreement was made. The vessel was sold at judicial sale under the decree of the United States Court to satisfy the lien of the attachment against her. She brought at that sale seventeen thousand dollars (17,000); that was the

amount paid to the owners of the Ward and cargo, and the only amount they ever received, and the proper proportionate amount of that sum is the true amount for which the appellee is liable in this case, which was properly adjusted and calculated in the court below, and judgment was there correctly entered for the amount admitted by the appellee in his affidavit of defense.

The contention of the appellant that the appraised estimate of damage, whether paid or not, fixes the true standard of appellee's liability cannot be entertained without disregarding the contract between the parties.

If " A " has a judgment of $1000 against " B " which is a lien on the latter's farm, if the farm is sold at sheriff's sale, on the judgment of " A," for $500, that is not payment of the entire judgment even though " A " bids in the farm and it is actually worth more than the amount of the judgment.

In Arnould on Marine Insurance, vol. 2, p. 730, in treating of the " running down " clause, it is said : " In another way he, the insured, may sustain a loss without remedy under this special clause ; that is to say, if he, after damage done to another ship by his own, stand by and see his ship sold under decree of the court of admiralty for a smaller sum than she is worth, his right against the underwriter is confined to the amount actually paid under the decree, and he cannot claim for loss by reason of the forced sale under decree."

In Thomson v. Hopper, 7 E. & B. 172, the facts were identical with the facts in this case. The " running down " clause was in the same language ; the face of the policy was for three thousand pounds (£3,000) ; the ship insured ran down and destroyed another ship. By a decree of the admiralty court the insured ship was sold to satisfy the damages for the sum of two thousand one hundred and ten pounds (£2110). Opinion by Lord CAMPBELL, C. J. " It is clear that the underwriters are liable only by virtue of the special clause. Their liability must be limited by its terms ; and these are that they are to make good 'three fourths part of the sum so paid.' The sum paid is here the amount of the damages which have been satisfied to the damaged party."

By WIGHTMAN, J.—" If the owners of a damaged ship had taken the Margaret in satisfaction of their claim, there would have been more ground for Mr. Mainsty's argument, as it is, there is none."

By CROMPTON, J. "The underwriters limit their ability by using the word paid. No more than £2110 is here paid."

On principle and authority full effect must be given to the contract of the parties as made. By their own covenants they have fixed a standard of liability between themselves too plain to be misunderstood. The court below correctly construed the contract and entered judgment for the true amount of the appellee's liability under its contract of indemnity.

The judgment is affirmed.