**AETNA INSURANCE COMPANY,**
**Plaintiff,**

**v.**

**S.S. ORTIGUERA, etc., Compania Gijonesa De Navegacion, S.A. and New Haven Terminal, Inc., Defendants,**

**v.**

**COMPANIA GIJONESA DE NAVEGACION, S.A., Third Party Plaintiff,**

**v.**

**NEW HAVEN TERMINAL, INC. and Merkinta S.A., Third-Party Defendants.**

**No. 82 Civ. 3405–CLB.**

United States District Court,
S.D. New York.

Feb. 22, 1984.

Harold M. Kingsley, Randal D. Pratt, New York City, for plaintiff.

Henry Billingsley, II, Walker & Corsa, New York City, for defendant Compania, S.S. Ortiguera, etc.

Douglas Franklin, McHugh, Leonard & O'Conor, New York City, for defendant New Haven.

Marc Pergament, Shaw, Goldman & Licata, Garden City, N.Y., for intervenor Sider Ventures & Services Corp.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

In this action plaintiff insurer, Aetna Insurance Co., having paid an insurance claim for damage to a steel flat bar shipment carried by the defendant vessel S.S. ORTIGUERA, sues, as a subrogee, the defendant stevedore, New Haven Terminal, Inc. The vessel and her owners have filed a Third Party Complaint against New Haven Terminal, Inc., the stevedore, at the port of discharge.

The defendant and third party defendant each seek summary judgment in their favor pursuant to Rule 56, F.R.Civ.P. The direct action by plaintiff against New Haven Terminal, Inc. has been dismissed for want of *in personam* jurisdiction. By a memorandum order of December 16, 1983, Sider Ventures and Services Corp. of New York ("Sider"), discussed further below, was added as a party plaintiff. There has been no appearance by Merkinta, S.A., a corporation existing in the Kingdom of Spain, or the Republic of Panama, also named as a third party defendant.

The following facts appear or are assumed for purposes of the motions. By documents dated May 7, 1981, Merkinta sold and invoiced a quantity of steel bar stock, identified through serial numbers on various bills of lading, to Sider Ventures and Services Corp. The cargo of steel, shipped aboard the S.S. ORTIGUERA, was sold by c.i.f. terms requiring payment "180 days from B/L date." Sider, the customer so invoiced, is an entity currently being liquidated in this district pursuant to Chapter 7 of the Bankruptcy Code, and, subsequent to the filing of the summary judgment motions, is an additional party plaintiff in this action by its trustee. The bills of lading describe Sider as consignee and Industrias del Besos ("Industrias") as shipper.

Aetna Insurance Company issued the standard ocean marine cargo policy, of the sort which covers shipments thereafter made, when declared by the insured. The policy was produced by a New York broker

and described the insured as: "Industrial Spain, Inc. and/or Sider Ventures and Services Corp. and/or Merkinta, S.A." It may be seen then that in addition to being vendor and purchaser of the steel, respectively, Merkinta and Sider were also co-insureds under the cargo insurance policy. Although it was the seller of the goods, Merkinta was not the manufacturer of the steel bars, which are understood to have been fabricated in Spain by Industrias. We are told without contradiction, and the policy of insurance bears this out, that Merkinta, Sider and Industrial Spain were corporate affiliates in common ownership and control, all of whom shared offices in New York City at 595 Madison Avenue, the address appearing on the insurance policy.

Movants contend that Sider never paid Merkinta for the shipment, and that neither Merkinta nor anybody else ever paid Industrias, the manufacturer. Indeed, by an order dated September 20, 1983, Magistrate Gershon of this Court has precluded plaintiff from offering documentary evidence of payment by Sider to its suppliers. This order was evoked by a failure to give discovery. Under the policy which insures both Merkinta and Sider, as well as Industrial Spain, Inc., Aetna elected to pay Industrial Spain, which had no relation to this particular shipment. It is now contended that this payment, dated February 1, 1982, was made by "mistake," should have gone to Sider instead, and that on finding a mistake had been made, Industrial Spain credited its open account with Sider for the amount of the Aetna payments. In my view, even if true, these facts are of no consequence to the carrier or the stevedore, although they may well be of interest to the Bankruptcy Court administering Sider's liquidation under a petition filed about six weeks later (March 15, 1982).

The only legitimate interest of the shipper and stevedore would seem to be that they not be exposed to a risk of double payment if there exists an entity not now a party which has or may assert a claim for damage to the same steel. To complete the story of the steel, other documents produced suggest, although they do not prove, that Sider allowed a Toronto Bank to perfect a security interest in this same steel after its discharge from the vessel, and that the Bank sold the same steel and other inventory at auction, for its account as a lienor, retaining the proceeds of the sale, to the detriment of unpaid manufacturers in Spain, including Industrias. See *In re Sider Ventures & Services, Inc., Debtor*, 83 Civ. 6114–CLB (S.D.N.Y. January 9, 1984, not otherwise reported).

■ Essentially, the argument of the vessel and the stevedore is that Aetna paid the loss as a volunteer; its payee Industrial Spain, Inc. had no insurable interest in the goods. This point is answered by documentary evidence which, if believed, shows that some scant few weeks prior to the filing of a Chapter 7 petition by Sider, its corporate affiliate, Industrial Spain, Inc. gave Sider credit towards an antecedent debt or upon an open account. Also, the subsequent addition of Sider's trustee as a co-plaintiff is an independent practical answer to the argument that Aetna is not a proper subrogee, but a mere volunteer.

As to Sider, movants argue that it is not the real party in interest, because the unpaid manufacturer, Industrias "may have" superior rights. They also assert Sider had no recoverable damages because "it never paid for the goods and never will." Movants point out that under a "c.i.f. duty paid landed New Haven" contract, such as here present, the risk of loss or damage as between seller and purchaser is that of the seller until discharge of the cargo, and that by its terms the Aetna policy does not cover when insurance has been so provided by others.

■ In light of the addition of the trustee of Sider as an additional party plaintiff and because Merkinta has been made a party defendant, on the present state of the record, the motions must be denied. If the interesting scenario to the effect that Aetna paid Industrial Spain, Inc. by mistake intending to pay Sider, and that Sider thereafter and prior to the filing in the bankruptcy court received a lawful and

valid credit upon its open account with Industrial Spain, stands up at trial, then Aetna is a proper subrogee, not a volunteer, and is entitled to sue in the right of Sider. If not, then the Sider trustee, as an added party has the right to sue, as provided by § 2–722 of the New York Uniform Commercial Code. The straight bills of lading in this case ran in favor of Sider as consignee. Although Industrias is listed as the shipper on the bills, it preserved no lien and the seller was Merkinta. Under applicable COGSA provisions Sider acquired title to the goods subject to the terms of any agreement with its transferor and became the direct obligee under the contract of carriage with the vessel, enjoying the right to sue the vessel and owner. See 49 U.S.C. § 112. As a result, Sider was able to and did take delivery of the steel, and was able to and did create a security interest therein in favor of the Toronto Dominion Bank. The ability to create such a lien is a consequence of having title. The seller, the manufacturer or the shipper could have so structured the documentation to have retained title until payment (*e.g.*, by issuing a negotiable bill of lading against an international letter of credit). They chose not to do so. At most they are unsecured creditors of Sider. As such, they may file claims in the bankruptcy court if so advised, and received the same dividend as other creditors holding claims of like priority. As between a shipper who has parted with title to goods and a consignee who has not paid for the goods, even on a c.i.f. contract, the consignee generally is the proper party to sue the carrier for damage to the goods or breach of the contract of carriage. See U.C.C. § 2–722, also 49 U.S.C. § 112; *Hoescht v. M/V Don Nicky*, 589 F.2d 795 (5th Cir.1979).

 Nor does this Court perceive any difficulty in showing damages. By hypothesis, steel which is bent and twisted has a market value at the time and place of discharge, ascertainably less than the same steel in merchantable condition, free of any defect. This is the measure of Sider's damages here. At least in contemplation of law, the damaged steel sold for less at the subsequent auction sale by Sider's bank, thereby diminishing in the same amount, the proceeds of the auction and therefore the surplus money payable to the trustee. Cases such as *Internatio v. M/V Taimyr*, 602 F.2d 49 (2d Cir.1979), where the consignee's damages are limited by his existing resale contracts, are readily distinguished on their facts, assuming, as we must, that *Internatio* was properly decided.

The motions are in all respects denied. Counsel shall communicate with the Chambers of the Hon. Nina Gershon, U.S. Magistrate, to whom this action has been referred previously for all pre-trial purposes, in order that the case may be made ready for trial pursuant to such scheduling order as the Magistrate may impose.

So Ordered.